The STATE of Texas, ex rel., Jack SKEEN, Jr., Criminal District Attorney, Smith County, Texas, Relator,

v.

Honorable Joe TUNNELL, District Judge, 241st Judicial District Court of Smith County, Texas, Respondent.

No. 12–88–00313–CR.

Court of Appeals of Texas, Tyler.

Jan. 6, 1989.

Jack Skeen, Jr., Dist. Atty., Tyler, for relator.

Don Carroll, Ireland, Carroll & Kelley, Tyler, Bob Whitehurst, Athens, for respondent.

## ORIGINAL PROCEEDING

COLLEY, Justice.

This is an original mandamus proceeding. Relator, Jack Skeen, Jr., Smith County Criminal District Attorney, seeks the writ to compel Respondent, the Honorable Joe

Tunnell, District Judge, to set aside his order of December 6, 1988, reinstating[1] a prospective juror who was peremptorily struck by Relator, and to call a new array in the case.

The record reveals that Miller is a black man, and that the State exercised one of its peremptory challenges against Jimmy Winston Brown, a black venireman. Following a *Batson*[2] hearing, Respondent determined that Brown had been challenged on the basis of his race. The Respondent "[voided] the State's strike as to Winston Brown and [placed] him back on the jury panel." Relator excepted to this order, stating, "Judge, I would ask—I don't believe the court has the authority." Respondent indicated his awareness of "the statute,"[3] but explained that he was of the opinion that *Batson* "[did] not limit the [trial] court to any one exclusive remedy in this situation." It is clear from Respondent's remarks that he refused to follow the procedure prescribed by article 35.261(b), which reads: "If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, *the court shall call a new array in the case.*" (Emphasis added).

Relator argues that the provisions of article 35.261(b) are mandatory, and that Respondent had a nondiscretionary, ministerial duty to quash the venire and "call a new array in the case."

Respondent contends that the mandamus relief should be denied. First, Respondent argues that he did not have a nondiscretionary, ministerial duty to follow the provisions of article 35.261 because its provisions are not mandatory, but merely "directory or permissive." Second, Respondent asserts that in the event this court construes the statute to be mandatory, thus casting upon him a ministerial duty to quash the venire and summon a new venire

---

1. The oral order reinstated the juror on the venire called to try trial cause No. 1–88–601, styled *The State of Texas v. Tommy Alvin Miller,* a criminal case pending on the docket of the 241st Judicial District Court of Smith County, Texas.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. Tex.Code Crim.Proc.Ann. art. 35.261 (Vernon Supp.1989) (Hereinafter referred to as article 35.261).

in the case, the statute so construed is violative of the separation of powers doctrine embodied in Tex. Const. art. II, § 1, the equal protection clauses of the Fifth and Fourteenth Amendments, and the impartial jury guarantee of the Sixth Amendment.

Unlike our mandamus jurisdiction in civil cases,[4] we have no authority in criminal cases to issue a writ of mandamus to compel a trial judge to perform an act unless the trial judge has a clear legal duty, ministerial in character—as distinguished from discretionary—, to perform the act. *Smith v. Flack*, 728 S.W.2d 784, 789 (Tex.Cr.App. 1987); *State ex rel. Wade v. Mays*, 689 S.W.2d 893, 898–899 (Tex.Cr.App.1985). We conclude that the statute is mandatory and constitutional, and we conditionally order the issuance of the writ of mandamus sought by Relator.

Article 35.261 reads:

(a) After the parties have delivered their lists to the clerk under Article 35.26 of this code and before the court has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of

race, the court shall call a new array in the case.

We first address Respondent's argument that article 35.261(b) is directory and not mandatory. Respondent argues that while "[i]n statutory construction, the word 'shall' is generally construed to be mandatory," it is often "found to be directory, or permissive." Respondent observes that a court in determining "whether the legislature intended the particular provision to be mandatory or merely directory" must be governed by "consideration ... [of] the entire act, its nature and object, and the consequences which would follow from each construction."

In support of these contentions, Respondent quotes from *Hunt v. Heaton*, 631 S.W.2d 549, 550 (Tex.App.—Beaumont 1982), *aff'd*, 643 S.W.2d 677 (Tex.1982), as follows: "Although the word 'shall' is generally construed to be mandatory, it may be and frequently is held to be directory." That language is but a verbatim quote from *Lewis v. Jacksonville Building & Loan Ass'n.*, 540 S.W.2d 307, 310 (Tex. 1976). The Supreme Court in *Lewis*, in explanation of that language, wrote: "Provisions which do not go to the *essence* of the act to be performed, ... are not ordinarily regarded as mandatory." (Emphasis added). The same analysis is made in *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943, 945 (1956).

In *Brinkley v. State*, 167 Tex.Cr.R. 472, 320 S.W.2d 855, 856 (1959), the Court of Criminal Appeals, in construing former Tex.Code Crim.Proc.Ann. art. 755 (prescribing the time for filing motions or amended motions for new trial), wrote:

We agree that the word 'shall' when used in a statute may sometimes be construed as permissive or directory, but we understand the rule to be that 'shall' must be given that meaning which will best express the legislative intent. (Citation omitted).

The *Brinkley* court, in rejecting appellant's contention that the statute there involved was "discretionary and not mandatory," said that to hold "that the legislature in-

**4.** Wherein the writ may issue to correct clear abuse of discretion.

tended by the provision in question to permit the court to determine the motion or amended motion [for new trial] within twenty days, or direct the court to do so if he found it convenient, would make the provision[5] a useless and meaningless thing." *Id.*

In *Waythe v. State*, 533 S.W.2d 802, 804 (Tex.Cr.App.1976), the court followed *Brinkley* in construing Tex.Penal Code Ann. § 3.04(a) (Vernon 1974), which the court called a "model of simplicity, reading: 'Whenever two or more offenses have been consolidated or joined for trial under Sec. 3.02 of this code, the defendant *shall* have a right to a severance of the offenses.'" (Emphasis added). The *Waythe* court noted that because of the plain language employed in the statute, "[w]e have no ambiguity; instead, we have a command by the law-making body which we must enforce." *Waythe*, 533 S.W.2d at 804.

■ We hold that the simple one-sentence provision of article 35.261(b) is likewise a command[6] by the legislature that must be followed by trial judges and enforced by the appellate courts, unless it is constitutionally infirm.

■ We turn now to consider Respondent's claim that the statute is unenforceable because it is unconstitutional. First, we address Respondent's contention that the statute represents action by the legislative department in violation of the separation of powers doctrine of Tex. Const. art. II, § 1. This contention is understandably unsupported by citation of analogous authority because the authority of the Texas Legislature to make laws and prescribe rules of procedure in both civil and criminal cases has long been recognized.[7] As early as 1890, the then Court of Appeals wrote:

> In this state for more than 30 years we have had a Penal Code and a Code of Criminal Procedure, which, having been

carefully prepared by distinguished, experienced, and able jurists, were adopted by the legislature. These Codes have been pronounced by the bench and bar of our state to be the most perfect system of criminal laws ever devised. It is declared that the Code of Criminal Procedure is intended to embrace the rules applicable to the prevention and prosecution of offenses against the laws of this state, and to make rules of proceeding in respect to the prevention and punishment of offenses intelligible to the officers who are to act under them.... We regard it as the imperative duty of this court, and of all other courts of this state, in the trial and determination of causes, to be guided and controlled by the statutes of the state, whenever there is a statute applicable to the question presented.

*Leeper v. State*, 29 Tex.App. 63, 14 S.W. 398, 400 (1890).

We conclude that the Legislature's enactment of article 35.261 was a proper exercise of its legislative powers under Tex. Const. art. III, § 1. *Brown v. City of Galveston*, 75 S.W. at 492, 495.

We now discuss Respondent's claim that the statute violates the equal protection clauses of the Fifth and Fourteenth Amendments and the guarantee of trial by an impartial jury afforded by the Sixth Amendment.

■ Although it is obvious that the Legislature enacted article 35.261 to implement the *Batson* decision, the Legislature chose but one of *Batson*'s suggested procedures to enforce the constitutional rule. Even if that legislative choice be unwise, and likely to give rise to troublesome consequences affecting the trial process,[8] the Legislature, not the courts, must provide the remedy. *Shoppers World, Inc. v. State*, 373

---

5. That a motion or amended motion for new trial "shall be determined by the court within twenty (20) days after the filing of the original or amended Motion."

6. No necessity exists here for resort to statutory rules of construction to ascertain legislative intent with respect to article 35.261(b).

7. *See Brown v. City of Galveston*, 97 Tex. 1, 75 S.W. 488, 492, 495 (1903).

8. As Respondent's arguments demonstrate.

S.W.2d 374, 377 (Tex.Civ.App.—San Antonio 1963), aff'd, 380 S.W.2d 107 (Tex.1964). However unwise the mandated procedure embodied in the statute may be, we are unable to conclude that it is subject to the constitutional challenges mounted by Respondent.[9] We presume that the procedure suggested by the United States Supreme Court for implementation of Batson's rule is constitutionally permissible. Thus, the statute is neither violative of the equal protection clauses of the Fifth and Fourteenth Amendments nor of the Sixth Amendment guarantee of trial before an impartial jury. Batson, 106 S.Ct. at 1724.

We cannot agree with Respondent's argument that the decision in Booker v. Jabe, 775 F.2d 762 (6th Cir.1985),[10] supports his claim that the statute under consideration violates the Sixth Amendment. The Booker court dealt with a case [11] wherein both defense counsel and State counsel exercised peremptory challenges to eliminate prospective jurors on the basis of race.[12] The Booker court, concluding that Booker's Fourteenth Amendment claim was foreclosed by Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), held that "a prosecutor's systematic use of peremptory challenges to excuse members of a cognizable group from a criminal petit jury offends the Sixth Amendment's protection of the defendant's interest in a fair trial and the public's interest in the integrity of judicial process...." Booker, 775 F.2d at 772. Having so ruled, the Booker court turned "to establish the *procedures* by which [the violations] ... will be demonstrated and remedied." Id. (Emphasis added). Thereafter, the court formulated procedures,[13] including an evidentiary hearing and a timely mistrial motion by the offended party, state or defendant, to effect the remedy. The sole remedial procedure devised by the Booker court was as follows:

> If the trial court finds that the non-moving party's explanation of its use of peremptory challenges does not rebut the moving party's prima facie case of a Sixth Amendment violation, the judge will declare a mistrial, *and a new jury will be selected from prospective jurors who were not previously associated with the case.*

Id. at 773 (Emphasis added).

In the case before us, Respondent implicitly argues that the statute, which prescribes a procedure for enforcing the equal protection clause of the Fourteenth Amendment in criminal jury trials, and whose provisions are virtually identical to Booker's remedy for violation of the Sixth Amendment, somehow violates the Sixth Amendment's guarantee of a fair trial with an impartial jury. We reject that argument.

We hold that article 35.261(b) is mandatory, and that its enforcement does not violate the provisions of the Fifth, Sixth, or Fourteenth Amendments, or the provisions of Tex. Const. art. II, § 1.

We are confident that Judge Tunnell will comply with our decision [14] and that, in

---

9. One implication of Respondent's argument is that the statute enables a prosecutor to deny an accused his Sixth Amendment protections by engaging in "purposeful unconstitutional conduct," that is, deliberate and repetitive use of peremptory challenges in violation of Batson's rule, in order to secure a venire he deems favorable to the State. This argument, of course, presumes that a state's attorney will engage in unlawful conduct. The presumption in law, however, obtains that the state's attorney will discharge his duties in a constitutional and lawful manner. Cook v. State, 146 Tex.Cr.R. 523, 176 S.W.2d 941, 943 (1944). If he does not do so, he becomes subject to sanctions, including punishment for contempt, removal from office, and perhaps suspension or disbarment. We refuse to declare the statute unconstitutional based on the premise that a prosecutor *may* intentionally and unlawfully engage in "purposeful unconstitutional conduct."

10. Delivered before Batson.

11. A State court prosecution of a black defendant for armed robbery.

12. The prosecutor employed twenty-two challenges to remove blacks, and defense counsel used thirty-seven challenges to eliminate whites.

13. Amazingly similar to Batson's prescriptions. See Booker, 775 F.2d at 773.

14. The temporary stay of proceedings in trial court cause No. 1-88-601, styled The State of Texas v. Tommy Alvin Miller, pending on the

conformity therewith, he will forthwith: set aside his oral orders of December 6, 1988, reinstating Mr. Jimmy Winston Brown on the venire; quash the venire of which Mr. Brown was a member; and summon a new panel of jurors in the case. If he does not do so, the Clerk of this Court shall forthwith issue the writ of mandamus sought by the State.

docket of the 241st Judicial District Court of    Smith County, Texas, is hereby lifted.